Amberlea Davis, Nevada Bar No. 11551
LAW OFFICES OF AMBERLEA DAVIS
501 S. 6th Street
Las Vegas, NV 89101
(702) 380-4274
Amber@SheIsMyLawyer.com
Attorney for Creditor Nick Pyknis

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | BK-2214269 |
| | ) | |
| | ) | Chapter 7 |
| MARLENA DENISE HALL | ) | |
| | ) | NOTICE OF HEARING ON |
| | ) | MOTION FOR RELIEF FROM STAY |
| Debtor | ) | |
| | ) | Date: 04/18/23 |
| | ) | Time: 1:30 pm |
| | ) | Teleconference: (669) 254-5252 |
| | ) |    Meeting ID 161 166 2815 |
| | ) |    Passcode 115788# |

**NOTICE IS HEREBY GIVEN** that a MOTION FOR RELIEF FROM STAY was filed on March 14, 2023 by Creditor Nick Pyknis. The Motion seeks the following relief: Relief from stay to continue the summary eviction process. Any opposition must be filed pursuant to Local Rule 9014.

**NOTICE IS FURTHER GIVEN** that if you do not want the court to grant the relief sought in the Motion, or if you want the court to consider your views on the Motion, then you must file an opposition with the court, and serve a copy on the person making the Motion ***no later than 14 days*** preceding the hearing date for the motion, unless an exception applies (see Local Rule 9014(d)(3)). The opposition must state your position, set forth all relevant facts and legal authority, and be supported by affidavits or declarations that conform to Local Rule 9014(c).

If you object to the relief requested, you must file a **WRITTEN** response to this pleading with the court. You must also serve your written response on the person who sent you this notice.

If you do not file a written response with the court, or if you do not serve your written response on the person who sent you this notice, then:

• The court may *refuse to allow you* to speak at the scheduled hearing; and

• The court may *rule against you* without formally calling the matter at the hearing.

**NOTICE IS FURTHER GIVEN** that the hearing on the said Motion will be held before a United States Bankruptcy Judge, in the Federal Foley Building, 300 Las Vegas Boulevard South, Third Floor, Las Vegas, Nevada 89101 on 04/18/2023 at 1:30 APM.

DATED: <u>3/20/23</u>

<u>/s/ Amberlea Davis</u>
Attorney for Creditor

2

# CERTIFICATE OF SERVICE

On March 20, 2023, I duly served the following documents:

- Notice of Hearing  on Motion for Relief from Stay

Via the Court's Electronic Filing System to all listed parties receiving notice pursuant to the

Court's CM/ECF system.


DATED: 3/20/23                              /s/ Amberlea Davis
Attorney for Creditor

# Exhibit A

## Motion for Relief from Stay

NVB 4001 (Rev. 09/20)

# * * § 362 INFORMATION SHEET * *

Marlena Denise Hall

DEBTOR

Nick Pyknis

MOVANT

22-14269-nmc

BK-                                      MOTION #:

CHAPTER: 7 ▾

---

**_Certification of Attempt to Resolve the Matter Without Court Action:_**

*Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.*

*Date:* 3/14/21                          *Signature:* /Amberlea Davis

*Attorney for Movant*

---

Note for parties not represented by an attorney: Information about motions for relief from the automatic stay is available at the U.S. Bankruptcy Court's website: https://www.nvb.uscourts.gov/filing/filing-pro-se/legal-services/.

---

PROPERTY INVOLVED IN THIS MOTION: 5433 Magic Mango St, North Las Vegas, NV 89

NOTICE SERVED ON:  Debtor(s) _____ ; Debtor's counsel ☑ ; Trustee ☑ ;

DATE OF SERVICE: 3/14/23

---

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st _____ | 1st _____ |
| 2nd _____ | 2nd _____ |
| 3rd _____ | 3rd _____ |
| 4th _____ | 4th _____ |
| Other: _____ | Other: _____ |
| Total Encumbrances: _____ | Total Encumbrances: _____ |
| APPRAISAL of OPINION as to VALUE: | APPRAISAL of OPINION as to VALUE: |

---

**TERMS of MOVANT'S CONTRACT with the DEBTOR(S)::**

Amount of Note: Lease

Interest Rate: n/a

Duration: Month to Month

Payment per Month: $1500

Date of Default: Before 1/1/21

Amount in Arrears: 8480.75

Date of Notice of Default: 1/7/21, 5/9/22

SPECIAL CIRCUMSTANCES:
   Has not paid rent in more than 5 months.

SUBMITTED BY:  Attorney Amberlea Davis

_____

---

**DEBTOR'S OFFER of "ADEQUATE PROTECTION" for MOVANT :**

.
.
.
.
.
.
.

SPECIAL CIRCUMSTANCES:

SUBMITTED BY: _____

SIGNATURE: _____

MOT
Amberlea Davis NV Bar #11551
LAW OFFICES OF AMBERLEA DAVIS
501 S. 6th Street
Las Vegas, NV 89101
(702) 440-8000
Amber@sheismylawyer.com
Attorney for Creditor Nick Pyknis

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| In re: ) | BK-2214269 |
| ) | |
| ) | Chapter 7 |
| MARLENA DENISE HALL ) | |
| ) | MOTION FOR RELIEF FROM STAY |
| Debtor ) | |
| ) | Date:  04/18/23 |
| ) | Time:  1:30 pm |
| ) | |
| ) | Teleconference: (669) 254-5252 |
| ) | Meeting ID 161 166 2815 |
| ) | Passcode 115788# |

Creditor Nick Pykins hereby moves this court pursuant to 11 U.S.C.  § 362 for relief from the automatic stay with respect to an unlawful detainer action related to real property commonly known as 5433 Magic Mango Street, North Las Vegas, NV 89031 ("Subject Property").   In particular, Creditor requests that this Court issue an Order allowing Creditor to continue eviction proceedings against Debtor.  Creditor asks for relief based on 11 U.S.C. §§362(d)(1) and (d)(2). This motion is supported by the attached Memorandum of Points and Authorities; the pleadings now on file; and any testimony the court may entertain.

The Creditor states as follows:

**FACTUAL BACKGROUND**

On or about November 5, 2019, Creditor Pyknis, as Landlord, and Debtor Hall, as Tenant, entered into a Residential Lease ("Lease") [Exhibit A, Lease] for the Subject Property located at 5433 Magic Mango Street, North Las Vegas, NV 89031.  Pursuant to the Lease, the term of tenancy

commenced on December 1, 2019 and continued until November 30, 2020 with a monthly rent of $1225.00, which was increased to $1500, per month, after the tenancy became month-to-month. Creditor remains in the property as of filing.

Debtor has failed to pay rent since the lease continued to a month to month, but CHAPS paid for some months.  The resulting a rental arrearage in excess of $8,400. Consequently, Creditor served a Pay or Quit Notices on the Debtor on January 1, 2021; May 9, 2022;  and most recently on March 8, 2023 at which time, Creditor was informed of this instant bankruptcy.

**Relief from Stay is Proper Pursuant to 11 U.S.C. §362(d)(1)**

There is "cause" under 11 U.S.C. §362(d)(1) to lift the automatic stay as Debtor continues to occupy the property without compensating the Creditor. Creditor has diligently pursued his legal rights to evict Debtor, but was thwarted by Debtor's Chapter 13 filing.  Based on the Trustee's Report of No Distribution [Dkt. 19], sufficient assets do not exist in Debtor's estate to fully compensate Creditor for this continuing financial loss.  Consequently, strong "cause" exists to lift the automatic stay.

### Relief from the Stay is Property under 11 U.S.C. §362(d)(2)

Pursuant to 11 U.S.C. §362(d)(2), the Court may terminate the automatic stay, with respect to a stay of an act against property, if the debtor does not have an equity in the property and if such property is not necessary to an effective reorganization.  Debtor is a tenant of the property in question and consequently has no equity in the property.  Moreover, as the subject property is not part of the bankruptcy estate, it is not necessary for an effective reorganization.  Consequently, the automatic stay should be lifted to allow the eviction process to proceed.

### **CONCLUSION**

Relief from the stay is appropriate under 11 U.S.C. §362(d).  "Cause" for relief exists as the Creditor will suffer undue financial hardship should the Property remain protected by §362.  Relief is also appropriate under §362(d)(2) because the Debtor has no equity in the property and because it is not necessary for an effective reorganization.

**WHEREFORE**, the Creditor respectfully prays that this Honorable Court:

1.  Grant the Creditor relief from the stay and to allow Creditor to repossess the Property and evict the Debtor from the Property;

2.  Grant the Creditor any such relief as the Court deems appropriate.

DATED this 14th day of March 2023

RESPECTFULLY SUBMITTED:

 /s/ Amberlea Davis
AMBERLEA DAVIS Bar # 11551
501 S. 6th Street
Las Vegas, NV 89101
Telephone: 702-380-4274
Fax: 702-380-8496
Amber@sheismylawyer.com
*Attorney for Nick Pyknis*

# EXHIBIT A

DocuSign Envelope ID: 75B8E5D8-026D-4239-99E6-45205C157E5E



# LEASE AGREEMENT

### THIS LEASE IS A LEGALLY BINDING CONTRACT.

### IF NOT UNDERSTOOD, PLEASE SEEK COMPETENT LEGAL ADVICE.

**1. Agreement: This Lease Agreement**, hereinafter referred to as the **"Agreement"**, is entered into on **November 05, 2019** between **Nick Pyknis**, Lessor, hereinafter referred to as **"LANDLORD"** the legal owner(s) of the property through the LANDLORD'S AGENT, **Avalon Realty & Oaktree Management, Inc.**, hereinafter referred to as **"AGENT"**, and **Marlena Hall**, Lessee, hereinafter referred to collectively as **TENANT(S)**, and represents the following Agreement:

It is expressly understood that this Agreement is between the LANDLORD and each person who signs this agreement, hereafter referred to as "signatory", jointly and severally. In the event of default by any one signatory each and every remaining signatory shall be responsible for timely payment of rent and all other provisions of this Agreement.

THE PARTIES AGREE AS FOLLOWS:

**2) Premises:** LANDLORD hereby leases to TENANT and TENANT hereby leases from LANDLORD, subject to the terms and conditions of the Agreement, the following residential property, commonly described as:

**5433 Magic Mango Street, North Las Vegas, NV 89031**

The property is equipped with the following personal property belonging to the LANDLORD:

**range/oven, refrigerator, garbage disposal, dishwasher, microwave, washer & dryer, blinds, light fixtures.**

**2a) Acceptance of Premises:** TENANT has made an inspection of the property, either physically or electronically, prior to submitting an application and accepts the property in the condition it was in on that day and agrees that the property is clean and in a fit and habitable condition. TENANT acknowledges there are no damages to the property except for such damages as have been itemized in writing on the Check-In

TENANT INITIALS [ MH ]          Page **1** of **19**          TENANT INITIALS _____

© Avalon Realty & Oaktree Management, Inc. 2019

DocuSign Envelope ID: 75B8E5D8-026D-4239-99E6-45205C157E5E

Property Condition Report may also be ..... made a matter of record therein must be made to AGENT in writing within 7 days of occupancy.

**2b) Alterations and Improvements:** TENANT shall not paint, wallpaper or make other alterations to the property without the prior written consent of the AGENT. All alterations, changes and improvements built, constructed or placed on the premises by TENANT, including but not limited to: ceiling fans, mini or vertical blinds, built-in shelves (anything that is screwed into the walls or ceilings and/or that would leave a mark on walls or ceilings if removed), fencing, etc. shall, unless otherwise provided by written Agreement between TENANT and AGENT, remain at the property at termination of this lease. If TENANT removes these items, AGENT is authorized to replace them with similar and/or comparable items at the discretion of the LANDLORD or AGENT and deduct the cost from the TENANT'S deposits. In the event of any alterations, TENANT shall be financially responsible for restoring the Premises to its original condition if requested or as directed by LANDLORD or AGENT.

AGENT reserves the right to require an additional Security Deposit for any approved alterations or improvements of a temporary nature.

**NO COMPENSATION WILL BE GIVEN FOR REPAIRS OR IMPROVEMENTS WITHOUT PRIOR WRITTEN AGREEMENT FROM AGENT.**

**3) Occupancy and Use of Premises:** The property is leased to TENANT for use as a private dwelling only and not for any commercial enterprise or for any purpose which is illegal. Occupancy shall be limited to the __2__ person(s) named on the application as permanent residents. The property is not to be used for any other purpose, or be occupied by any other persons, except transient relatives or guests of TENANT on a non-permanent basis, without first obtaining the written consent of AGENT.

The TENANT agrees to pay the sum of $25.00 per day for each guest remaining in the property more than thirty days. Notwithstanding the foregoing, in no event shall any guest remain on the property for more than sixty days without AGENT'S written approval.

TENANT shall not keep or have on the leased premises any illegal narcotics, article or item of a dangerous, inflammable or explosive character that might unreasonably increase the danger of fire on the leased premises or that might be considered hazardous by any responsible insurance company.

TENANT agrees not to commit, suffer or permit any waste or nuisance, cause excessive noise or disturb others on or near the premises.

TENANT shall comply with all requirements of the Homeowner's Association and the statutes, ordinances and requirements of all municipal, state and federal authorities now in force or which may hereafter be in force, pertaining to the use of the premises.

It is a misdemeanor to commit or maintain a public nuisance or to allow any building or boat to be used for a public nuisance. Any person who willfully refuses to remove such a nuisance when there is a legal duty to do so is guilty of a misdemeanor. Summary NRS 202.470.

A Public nuisance may be reported to the local sheriff's department. A violation of building, health or safety codes or regulation may be reported to the responsible government entity in your local area such as the code enforcement division of the county/city government or the local health or building departments.

**4) Cards, Remotes and Keys:** Upon execution of this lease and payment of all initial funds and rents due, TENANT shall receive the following:

| 1 | Front Door Keys | | Security Door Keys | 1 | Mailbox Keys |
|---|---|---|---|---|---|
| 1 | Garage Door Openers | 1 | Entry Gate Openers | | Pool Card |
| | Pedestrian Gate Keys | | Gym/Clubhouse Keys | 1 | Garage Door Key |

TENANT INITIALS _MH_

Page **2** of **19**

TENANT INITIALS _____

© Avalon Realty & Oaktree Management, Inc. 2019

If TENANT locks themselves out of the leased premises, a copy of the key may, if available, be obtained from the AGENT during normal office hours and a $65.00 deposit is required with the pickup of the key and is refundable when returned.

If TENANT does not return the keys, remotes and any openers to the AGENT at the end of the lease, TENANT will be charged the actual cost of re-keying the locks and replacing the remotes and openers.

**5) Assignment and Subletting:** TENANT shall not assign this lease or sublet or grant any concessions or license to use the premises or any part thereof without the prior written consent of the AGENT. An assignment, subletting, concession or license without the prior written consent of the AGENT shall be deemed a default of the lease and all deposits shall be forfeited. Consent by the LANDLORD or AGENT to one assignment, subletting, concession or license shall not be deemed to be a consent to any subsequent assignment, subletting, concession or license. Should AGENT agree to assign or to allow a person or persons not on the original application to move-in, that person(s) must submit a completed application, pay the application/credit background check and TENANT'S shall pay a $95.00 administrative fee to re-write the lease, if approved. TENANT'S request to change the lease may require a change of rent which would go into effect immediately for the mutual benefit of all parties.

**6) Term:** The term of this Agreement shall begin on **December 1,2019** and end on **November 30,2020** then on a month-to-month basis thereafter as per the terms of this Agreement, until either party and/or AGENT shall terminate the same by giving the other party at least a thirty (30) day written notice as prescribed by Law.

If this Lease Agreement automatically extends into a month-to-month tenancy, the monthly rent payment will increase by 20% of the monthly rental amount in the original lease, unless otherwise agreed to in writing for a shorter lease extension.

If LANDLORD and/or AGENT is unable to deliver possession of the premises at the commencement hereof, neither LANDLORD nor AGENT shall be liable for any damage caused thereby, nor shall this Agreement be void or voidable, but TENANT shall not be liable for any rent until possession is delivered. TENANT may terminate this Agreement if possession is not delivered within three (3) days of the commencement of the term hereof.

**7) Rent:** TENANT shall pay rent at a monthly rate of **$1,225.00**, in advance on the first day of every month of the term and any extension thereof. Rent is payable electronically or by check, cashier's check, money order or cash. If payment is made in cash, there will be a fee of $30.00 charged to you to offset the special trip to the bank to deposit the cash. Payment of rent may be made by personal check until the first check is returned unpaid. Rent is considered late if not received on the 1st day of the month. There is no grace period and if rent is not paid on time, a Lease Compliance Oversight fee of $85.00 will be charged.

**7a) Partial Payment:** Should AGENT agree to accept a partial rent payment, there will be an additional charge of $25.00 for every partial payment and the late fees will continue to accrue until the rent is paid in full. AGENT's acceptance of a partial payment shall not act as a waiver of any terms of this Agreement nor is it to be interpreted by any Court as a change of terms or conditions of this Agreement.

**7b) Dishonored Checks:** If a check is returned unpaid, regardless of cause including "bank error", no additional payment may afterwards be made by check (either personal or business). Thereafter, TENANT agrees to pay all rents, late fees, notice fees and all costs to honor a returned check with certified funds. Any payments tendered to AGENT thereafter, which are not in the form of certified funds, shall be treated as if TENANT failed to make said payment until certified funds are received.

**7c) Returned Check Fee:** A service charge of $45.00 shall be charged on all rental checks returned unpaid regardless of cause. TENANT acknowledges that they are aware of the criminal sanctions and penalties for issuance of a check that the TENANT knows are drawn upon insufficient funds and which is tendered for the

TENANT INITIALS [MH]          Page **3** of **19**          TENANT INITIALS _____

© Avalon Realty & Oaktree Management, Inc. 2019

DocuSign Envelope ID: 75B8E5D8-026D-4239-99E6-45205C157E5E

purpose of committing a fraud upon a creditor, and AGENT will file a report with the District Attorney's office for prosecution. Rent is considered late until good funds are received. If payment is made electronically and is then cancelled or returned unpaid for any reason, TENANT will not be allowed to pay electronically thereafter.

**8) Place of Payment:** Payments are accepted at the office of the AGENT at 500 Rose Street, Las Vegas, Nevada, 89106 or as otherwise directed by AGENT.

**9) Delivery of Rent:** Said rent payments may be made by electronic payment or by depositing the same in our drop box or enclosed in a properly addressed envelope on which the correct postage is affixed and depositing it in the U.S. mail at TENANT'S risk. TENANT assumes the risk of any rents lost in mail and all parties agree that rent will be treated as if unpaid until received by the AGENT. The rent will be considered paid on the day the rent is received in the office of the AGENT regardless of the date of postmark. In the event the monthly rental payment is not made on time by the TENANT as required above, TENANT shall be considered to be in **default.**

TENANT may also personally deliver such payments to the Place of Payment during normal office hours which are Monday through Friday from 8:30 a.m. to 5:00 p.m., excluding Holidays.

**10) Late Fees:** In the event rent is not paid by 5:00 P.M. on the third day of the month (including week-ends and holidays), TENANT may cure said default by paying to AGENT the required monthly rent plus a late fee of 5% (Five Percent) of the Monthly Rental amount.

TENANT is aware that Nevada law specifically provides under **NRS.118A.150** that rent is defined as follows: "Rent" means all periodic payments to be made to the LANDLORD for occupancy of a dwelling unit, including, without limitation, all reasonable and actual late fees set forth in the rental Agreement."

The late charge period is not a grace period, and AGENT is entitled to make written demand for any rent unpaid on the second day of the rental period.

In the event a Notice to Pay Rent of Quit is served, personal or business checks will not be accepted nor will you be able to pay on-line as only **CERTIFED FUNDS** will be accepted.

**11) Notice Fees/Eviction Cost/Legal Action:** TENANT agrees to pay AGENT for all costs incurred by the AGENT in the event legal action is taken, including but not limited to: Notice Fees - for a Seven (7) Day Notice to Pay Rent or Quit, a Five Day Unlawful Detainer or a Three (3) Day Nuisance Notice or any other type of eviction notice - $200.00; statutory court costs; actual charges of the court runner for filing; TENANT shall be charged an administrative fee of $250.00 per contested evictions in which the LANDLORD or AGENT is the prevailing party; and reasonable attorney's fees. These charges will be taken out of the first money received by the AGENT after the action has taken place.

Should TENANT desire to cure default once eviction proceedings have been filed with Justice Court, all charges relating to the eviction plus late fees due will be considered rent and must be paid along with the unpaid rent for the current period in Certified funds.

**12) Utilities/Services:** TENANT to pay for the all utilities including gas, electric, water, trash, sewer and if applicable, landscaping and pool service, unless otherwise agreed to in writing prior to occupancy.

The water departments hold the LANDLORD ultimately responsible for the water bills if the TENANT does not pay their bill. Unless the water bill is included in the HOA dues which the LANDLORD pays, then the TENANT is to pay a deposit of $100.00 prior to move-in which will be refunded to them when they provide proof of payment of their final water bill.

TENANT understands that the sewer and trash charges are to be paid monthly with the rent payment as directed by AGENT. If a there is a pool or spa at the property, the pool service company will be hired by the

TENANT INITIALS ____MH____        Page **4** of **19**

TENANT INITIALS _____

© Avalon Realty & Oaktree Management, Inc. 2019

DocuSign Envelope ID: 75B6E5D8-026D-4239-99E6-45205C157E6E

TENANT and TENANT shall pay the monthly fees with their rent. Additionally, TENANT is responsible for maintaining the landscaping and yard cleanup (if applicable) unless professional landscaping service is provided for in this lease.

TENANT'S responsibility for these utilities and services begins at the commencement of this Agreement and TENANTS must leave all utilities on for 2 days after the last day of the end date of the lease or bear the cost of having the services re-instated. If not, TENANT will be charged an administrative fee of $85.00 plus the cost of the pro-rated utility bills they were responsible for.

TENANT BENEFIT PACKAGE: TENANT to pay $5.00 a month with their rent for the services provided in our Tenant Benefit Package. You may find details at https://www.lasvegas-propertymanagement.com/tenant-benefits

UTILITIES: TENANT to pay **$0.00** a month with their rent for the pro-rated monthly sewer and/or trash fees.

POOL SERVICE: TENANT to pay $ N/A a month with their rent for pool service.

LAWN SERVICE: TENANT to pay $ N/A a month with their rent for landscape service. If not professionally maintained, TENANT assumes full responsibility for the landscaping. HOWEVER, AGENT shall hire a Professional service at TENANT'S expense if TENANT does not care properly for the landscaping or if the Homeowner's Association issues 2 violation notices that pertain to landscaping (this includes weeds, dead shrubs, etc.) and TENANT shall pay the monthly landscaping charges with the rent.

### 13) Restrictions:

**13a) Smoking:** Cigarette, cigar, pipe, and e-cigarette smoking of tobacco, marijuana or any other type of substance are not allowed in the home or garage at any time. A violation of this section is grounds for a three-day nuisance notice for Breach of Contract.

Furthermore, should it be determined by AGENT or LANDLORD that smoking inside the premises occurred, TENANT shall be held liable for all costs related to painting, cleaning, air duct cleaning or other actions as required to rid the home of the smell of stale stagnant cigarette, cigar, pipe or marijuana odor.

Smoking outside is permitted.

**13b) Animals:**

If TENANT has a pet, a non-refundable Pet Administration fee of $250.00 per pet shall be paid prior to move-in. This is a one-time fee. In addition to this fee, you will also pay a monthly Pet Admin Fee per pet. The amount of the pet fee is determined based upon the "Paw Score" that petscreening.com assigns to your pet. Your "Paw Score" was _____ and your monthly Pet Admin fee will be $_____

Tenant shall bring no additional pet or animal - including service, therapy, emotional support or companion animals into or about the property at any time without first notifying the AGENT – this includes "pet sitting"; completing the required pet/animal application on PetScreening.com and paying the associated fees, if applicable, prior to bringing the animal on the property. There is no charge to you for this application when it relates to a Service Animal or ESA.

Should TENANT violate these rules, AGENT may serve TENANT with a 3-Day Notice to Quit and TENANT agrees to pay an immediate fine of $500.00. If written permission is granted for occupancy of a pet, an additional one time Pet Admin Fee of $250.00 per pet will be required and a monthly Pet Admin fee will be charged based upon the "paw score". TENANT shall submit a new application on PetScreening.com, upload Veterinarian record and proof of Pet Insurance. If approval is not given, TENANT agrees to re-home the pet within 7 days or AGENT will serve TENANT a 3-Day eviction notice for breach of contract.

TENANT INITIALS ⌐DS MH                    Page 5 of 19
                                          TENANT INITIALS _____

© Avalon Realty & Oaktree Management, Inc. 2019

DocuSign Envelope ID: 75B8E5D8-026D-4239-99E6-45205C157E5E

property will conduct a special inspection once in a 12 month period to check for any pet damage to the property at a charge to the TENANT of $75.00.

TENANT agrees to indemnify LANDLORD and AGENT for any and all liability, loss and damages which LANDLORD or AGENT may suffer as a result of any animal in the property.

This property requires Renters Insurance to cover pet damage or injury, proof of paid policy must be provided prior to move-in. LANDLORD or AGENT requires that TENANT provide written evidence that TENANT has obtained such pet insurance as may be available against property damage to the property and liability to third party injury. Each such policy shall name Avalon Realty & Oaktree Management as well as the LANDLORD as "additional insured".

TENANT further agrees to clean up after the pet immediately if living in an apartment, condominium, town home or other type of premise that does not have a private yard; on a daily basis if living in a condominium or townhouse with a private yard or on a bi-weekly basis if living in a single-family residence. TENANT further agrees to maintain the animal on a leash at all times per the animal control laws or maintain them in a fenced area. Leash laws pertain to both dogs and cats. TENANT also agrees to keep the animal from disrupting other neighbors by barking or other disruptive behaviors. TENANT understands that violation of this clause will mean that permission to have a pet may be revoked; TENANT may be given a 3-Day Nuisance Notice and may be evicted if the TENANT does not remove the animal from the premises. .

AGENT and LANDLORD reserve the right to revoke permission to keep any and all pets should TENANT not follow the pet rules in this Agreement. In case of revocation, TENANT will be considered in default if the pet(s) is not permanently removed from the property within 48 hours.

**13c) Vehicles:** All vehicles operated by TENANT must be registered with the Department of Motor Vehicles. Only vehicles maintained in operational condition and licensed may be parked in approved areas. AGENT may tow unauthorized vehicles at TENANT'S expense. TENANT may park no more than **2  vehicle**(s) on the premises at any one time. Neither LANDLORD nor AGENT is responsible for damage or theft while vehicles are parked on the premises. TENANT understands that no major vehicle repairs are allowed on premises.

**13d) Barbeque:** With the exception of electric cooking devices, outdoor cooking with portable barbecuing equipment is prohibited within ten (10) feet of any overhang, balcony or opening, unless the Premises is a detached single family home. The storage or use of any barbecuing equipment is prohibited indoors, above the first floor and within five (5) feet of any exterior wall. Adult supervision is required at all times the barbecue equipment is generating heat.

**14) Policies and Homeowner's Association:**

TENANT agrees to abide by any and all rules and policies, including but not limited to: rules with respect to noise, odors, disposal of refuse, pets, parking and use of common areas. Further, TENANT agrees to abide by all amendments and additions to said rules after due notice of any such amendments or additions.

This property   **X**  is or  _____  is not in a Homeowner's Association (HOA) and TENANT is also governed by their Rules and Regulations. The name of the HOA is **Hartridge Homeowners Association** and is currently being managed by **Camco**  whose phone number is **702-531-3382**.

TENANT hereby acknowledges that they have received a copy of the communities Rules and Regulations and agree to abide by same and further agree to pay for any fines levied as a result of failure to do so by themselves, their family, pets or guests. A violation of the HOA rules which result in a letter being issued by the association addressing the violation will result in an administrative charge to the TENANT for the AGENT's time to address the situation with the TENANT, take appropriate action as needed and communicate with the HOA regarding same. The charge to the TENANT will be $75.00 for the courtesy notice/violation plus any actual fines assessed. The administrative fee and any HOA fines shall be considered additional rent and shall be due along with the next monthly rent payment. Failure to abide by the Rules & Regulations can

TENANT INITIALS  MH                      Page **6** of **19**
                                            TENANT INITIALS  _____

© Avalon Realty & Oaktree Management, Inc. 2019

DocuSign Envelope ID: 75B8E5D8-026D-4239-99E6-45205C157E5E

**15) Renter's Rights:**

a) TENANT may display the flag of the United States, made of cloth, fabric or paper, from a pole, staff or in a window, and in accordance with 4 USC Chapter 1. LANDLORD may, at its option, with 30 days' notice to TENANT, adopt additional reasonable rules and regulations governing the display of the flag of the United States.

b) TENANT may display political signs subject to any applicable provisions of law governing the posting of political signs, and if the Premises are located within an HOA, the provisions of NRS 116 and any governing documents related to the positing of political signs. All political signs exhibited must not be larger than 24 inches by 36 inches. LANDLORD may not exhibit any political sign on the Premises unless the TENANT consents, in writing, to the exhibition of the political sign. TENANT may exhibit as many political signs as desired, but may not exhibit more than one political sign for each candidate, political party or ballot question.

c) TENANT may conduct a risk assessment or inspection of the Premise for the presence of lead-based paint and/or lead-based paint hazards at the TENANT'S expense for a period of ten days after execution of this Agreement. Such assessment or inspection shall be conducted by a certified lead based paint professional. If TENANT for any reason fails to conduct such an assessment or inspection, then TENANT shall be deemed to have elected to lease the Premises "as is" and to have waived this contingency. If TENANT conducts such an assessment or inspection and determines that lead-based paint deficiencies and/or hazards exist, TENANT will notify LANDLORD in writing and provide a copy of the assessment/inspection report. LANDLORD will then have ten days to elect to correct such deficiencies and/or hazards or to terminate this Agreement. In the event of termination under this paragraph, the security deposit will be refunded to TENANT.

**15) Renter's Insurance:** TENANT hereby covenants and agrees to purchase "Renters Insurance" from an insurance company licensed to do business in Nevada sufficient to protect themselves, their family, guests, invitees, pets and personal property. Additional coverage is required if TENANT has a pet or if the property has a pool or spa.

TENANT agrees that not keeping renter's insurance "in force" is a default of this contract. AGENT is not required or expected to maintain or monitor the policy coverage or to pay the renter's insurance premiums. All premiums and costs of renter's insurance policies shall be entirely the responsibility and obligation of TENANT and never that of the LANDLORD or the AGENT. TENANT will hold harmless both LANDLORD and AGENT for all costs and damages incurred by their failure to keep their policy in force and will defend any claim or litigation brought about by their failure to do so.

If a copy of this Policy is not provided to AGENT prior to move-in, TENANT shall pay of fee of $10.00 per day from date of occupancy until a copy of the Policy is provided to AGENT. Liability coverage must be a minimum coverage of $300,000. The policy must name both the LANDLORD and Avalon Realty & Oaktree Management, Inc. as additional insured for Liability reasons. TENANT shall indemnify, defend and save LANDLORD and AGENT harmless from all loss, investigation, suits, damage, cost, expense (including attorney's fees) liability or claims for personal injury or Property damage caused by any pet incurring or occurring in on or about the Property.

**If TENANT elects to self-insure by not complying with the contract a consequence will be that they are accepting full personal liability for both civil and criminal lawsuits for such mishaps as may have been covered by commercially available insurance to offset risk of loss, damage or injury. They agree to make no claim against LANDLORD or AGENT or AGENT's employees for any such damage or loss. LANDLORD's insurance does not cover TENANT'S property or liability. The cost for insurance is reasonable considering the peace of mind; the protection and the financial recovery of loss that you are entitled to if you are adequately protected by insurance.**

**16) Damage to the leased Premises by fire or other casualty:** In the event the leased premises, or any part

TENANT INITIALS  MH                Page 7 of **19**

                                        TENANT INITIALS  _____

© Avalon Realty & Oaktree Management, Inc. 2019

DocuSign Envelope ID: 75B8E5D8-026D-4239-99E6-45205C157E5E

..., earthquake or other casualty not due to TENANT'S negligence or willful act, or that of his family, pets or guests, the premises shall be promptly repaired by the LANDLORD and there shall be an abatement of rent corresponding with the time during which, and the extent to which, the leased premises may have been uninhabitable or, at the option of the LANDLORD, the lease Agreement shall be terminated and the deposits will be refunded. If the leased premises should be damaged by TENANT'S negligence or willful act or that of his family, pets or guests to the extent that LANDLORD shall decide not to rebuild or repair, the term of this lease shall end and the rent will be prorated up to the time of the damage. Neither LANDLORD nor AGENT will be responsible for providing living quarters in either case. TENANT should look to their Renter's Insurance Agent for assistance.

**17) Damage to TENANT'S property:** All of TENANT'S personal property in or about the leased premises shall be at the risk of the TENANT only, and neither the LANDLORD nor the AGENT shall be liable for any damage to said personal property or to TENANT, pets or any other persons or property caused by fire, flood, earthquake, water leakage, odors, excessive heat or extreme cold, or for any damage whatsoever caused by any heating or cooling system or equipment or appurtenances through the roof or for any damage arising from any act or neglect of other TENANTs, occupants or employees of the building in which the leased premises are located. TENANT is to look to their Insurance Agent for relief under their renter's policy.

**18) Right of inspection:** LANDLORD and AGENT shall have the right at all reasonable times during the term of this Lease, and any renewal thereof, to enter the leased premises for the purpose of: inspecting the premises and all buildings and improvements therein; in case of emergency; to make necessary or agreed repairs, decorations, alterations, improvements; supply necessary or agreed services; exhibit the premises to prospective or actual purchasers, mortgagees, TENANTs, workmen, insurance agents, Realtors, appraisers, or contractors or when TENANT has abandoned or surrendered the premises. A twenty-four (24) hour notice will be given to the TENANT prior to any inspection of the property unless of an emergency nature.

TENANT and AGENT agree that the 24-Hour Notice of Intent to Enter will be considered valid if notice is given at least 24 hours ahead of the appointment and is delivered either by speaking directly to the TENANT, leaving a voice mail message on the TENANT'S phone, sending a text mail to the tenants phone, sending an email to the TENANT or by positing a notice on their door.

TENANT understands that AGENT will conduct periodic interior property condition walk-throughs. These periodic property condition and maintenance review visits, with or without photographs, will be used to prepare a report of their findings. This report will be available to the TENANT and to the LANDLORD and will become a part of the TENANT'S file. If this on-site visit reveals a lack of landscaping care, of proper housekeeping, dirty carpets, unauthorized pets, guests or any other lease violation item including any items damaged by the TENANT or their family, pets, or guests then the TENANT'S will be notified in writing of the corrective actions which need to be taken and a follow-up walk-through will be set for approximately 2 weeks later to ascertain that all items have been addressed and/or corrected, cleaned, repaired or replaced.

If the follow-up walk-through reveals that corrective actions have not been taken by TENANT then AGENT may take action to correct the discrepancies and bill TENANT for the actual cost thereof. Any unpaid bill for the repairs and/or maintenance of this nature will be considered rent if not paid within 30 days and the money will be deducted from the next money received. TENANT may challenge any discrepancy report by applying in writing to AGENT prior to the end of the ten (10) day grace period.

TENANT understands that there will be a $75.00 charge for the first follow-up visit and all follow-up visits thereafter. This charge will be considered as additional rent if not paid within 15 days.

These inspections may also be scheduled if a 7-Day Notice to Pay Rent or Quit or a 3-Day Notice for Breach of Contract is served or a violation letter issued by the HOA is received. These inspections will be scheduled at a time convenient for the TENANT whenever possible. TENANT agrees to return our call to schedule a non-emergency appointment to review the property within 48 hours and understands that if they do not, a Notice of Intent to Enter may be posted on their front door and a trip charge of $75.00 will be charged to them for the posting fee. Should TENANT not be present for a confirmed appointment for such inspection

TENANT INITIALS [MH]                Page **8** of **19**
                                          TENANT INITIALS _____

© Avalon Realty & Oaktree Management, Inc. 2019

DocuSign Envelope ID: 75B8E5D8-028D-4239-99E6-45205C157E5E

notice of their intent to cancel the appointment, TENANT agrees to pay a fee of $75.00 and agrees to re-schedule the inspection within 48 hours.

**19) Maintenance and Repair:** All Repair Requests unless of an emergency nature, must be submitted on-line at www.lasvegas-propertymanagement.com whenever possible.

**19a)** TENANT covenants and agrees to keep the leased premises and appurtenances in good and sanitary condition during the term of this lease and any renewal thereof.

**19b)** TENANT shall immediately report to the LANDLORD any defect or problem pertaining to plumbing, wiring or workmanship on the Premises as well as any item at the property that needs repair or is not working properly.. TENANT agrees to notify LANDLORD of any water leakage and/or damage within 24 hours of occurrences. Failure to notify the AGENT of a needed repair may result in the TENANT bearing all financial liability including the costs of any water and/or mold damage and remediation.

**19c)** TENANT shall be responsible for all costs required to repair the plumbing, appliances, heating apparatus and electric and gas fixtures whenever damage thereto shall have resulted from TENANT'S misuse, waste, or neglect or that of his family, guests or pets. TENANT agrees to pay for all repairs; replacements and maintenance caused by misconduct or negligence and such charges shall be paid immediately or be regarded as additional rent to be paid no later than the next monthly rent payment date following such repairs.

**19d)** TENANT agrees to change or clean (if permanent type) at TENANT'S sole expense, air conditioner/heating filters at least every 30 to 60 days depending on our hvac schedule. It is agreed that should the ceilings need to be repainted because the air filters were not changed as required, TENANT will be charged for the cost to repaint same. If the air conditioner/heater requires service or repair due to dirty filters (i.e. coil cleaning) or improper thermostat settings by TENANT, TENANT will be charged the actual cost of the repair.

**19e)** TENANT is responsible for any damage done by wind or rain caused by leaving windows open and/or by overflow of water, stoppage of waste pipes or any other damage to appliances, carpeting or to the property in general that is due to the acts of the TENANT, their family, pets or guests.

**19f)** TENANT is responsible for all drain and main line cleaning due to grease, hair or foreign objects commencing 14 days from initial term of the lease and for all drain cleaning or plumbing stoppage due to TENANTs neglect as well as service calls to reset the garbage disposal.

**19g)** All repairs contracted for directly by TENANT (unless emergency exists and work is performed by a contractor approved by AGENT), and all service call fees created by TENANT'S not keeping their appointment with the service technician or when the service technician determines that there is not a problem but was called based upon misinformation and/or lack of knowledge on the part of the TENANT; or when the TENANT has asked for a repair, handled it themselves and failed to cancel the appointment prior to a service technician's arrival, shall be at the TENANT'S expense.

**19h)** Major maintenance and repair of the leased premises not due to TENANT'S misuse, waste or negligence or that of his family, guests or pets shall be the responsibility of the LANDLORD's. To arrange a major repair, TENANT must submit their request on-line or call the office of the AGENT. A repair equal to or less than $124.00 is considered a minor repair and it will be at the LANDLORD'S discretion to pay for or to charge the TENANT for the bill. Minor repairs may not be accumulated so as to make a single service call a major repair. Any of TENANT'S obligations under this paragraph that are not paid prior to TENANT vacating the premises will be deducted from the next monies received.

**19i)** If the property has a home warranty, it will be at the LANDLORD's discretion to pay for or to charge the TENANT for the service call fee. The service call fee is generally between $55 and $75. This property __ is or __ is not currently covered by a home warranty with _____.

TENANT INITIALS [ M·H·                    Page **9** of **19**
                                              TENANT INITIALS _____

© Avalon Realty & Oaktree Management, Inc. 2019

DocuSign Envelope ID: 75B8E5D8-026D-4239-99E6-45205C157E5E

regardless of the cause.

**19k)** It is TENANT'S responsibility to make sure that any ordered repairs are completed and to notify the AGENT within one (1) week if said repairs have not been completed. TENANT will be responsible for any repairs due to non-compliance.

**19l)** TENANT agrees to return our call to schedule a repair appointment within 24 hours and understands that if they do not, a Notice of Intent to Enter may be posted on their front door and a charge of $75 will be charged to them for the trip and posting fee. You may give us permission to enter without you being present to make necessary repairs in writing via email or text or on a recorded phone call.

**19m)** TENANT authorizes AGENT to have the carpets professionally steam cleaned, at TENANT'S expense at the end of every lease period with the vendo of the AGENT's choice.

**19n)** TENANT agrees to return a call from our office or from any Vendor calling to make a repair appointment within 24 hours if relating to water or electrical and within 48 hours for any other type of repair or service. Failure to return these types of calls may result in a Notice of Intent to Enter posted to your front door and a charge of $75 will be charged to you for the trip and posting fee. Should you not be present for a confirmed appointment with a Vendor you will be responsible for any trip charge the vendor charges and you agree to re-schedule with the Vendor within 24 hours.

**20) Pest Control:** TENANT understands that various pest, rodent and insect species (collectively, "pests") exist in Southern Nevada. Pests may include, but are not limited to, scorpions (approximately 23 species, including bark scorpions), spiders (including black widow and brown recluse), bees, snakes, ants, termites, rats, mice and pigeons. The existence of pests may vary by season and location. Within thirty (30) days of occupancy, if the Premises have pests, LANDLORD, at TENANT'S request, will arrange for and pay for the initial pest control spraying. TENANT agrees to pay for any future pest control spraying fees if TENANT desires this service. For more information on pests and pest control providers, TENANT should contact the State of Nevada Division of Agriculture at www.agri.nv.gob.

**21) Maintenance and repair of landscaping and pool, if applicable:**

Unless lawn service is included in the rent, TENANT covenants and agrees to maintain the lawn and shrubs in good order. Such maintenance shall include replacing sprinkler heads, proper watering, mowing, trimming and fertilizing. If the lawn and shrubs are not properly maintained, a lawn service company/person will be contracted and the cost will be added to the monthly rent. If a lawn service is provided by the LANDLORD that service in no way relieves the TENANT of making sure the lawn, shrubs and trees are properly watered. Failure to maintain proper watering and subsequent damage to the lawn, shrubs and trees shall be deemed to be the responsibility of the TENANT, and the cost of reseeding and replanting shall be charged against the TENANT'S Damage/Cleaning/Pet deposit or added to the following months' rent.

If the leased premises come equipped with a swimming pool and/or spa, TENANT to pay for professional service with a company of LANDLORD'S choice and payment is to be made with the monthly rent. If a pool service is provided by the LANDLORD that service in no way relieves the TENANT of maintaining a proper water level to prevent damage to motors, pumps, filters and other equipment and to empty the skimmer basket between pool service. Failure to maintain a proper water level and subsequent damage to motors, pumps, filters and other equipment shall be deemed to be the responsibility of the TENANT, and the cost of repair or replacement of the damages shall be charged against the TENANT'S deposits or added to the following months' rent.

Should special permission be given in writing to the TENANT to maintain the pool personally or to use a different company, TENANT agrees to assume full responsibility for the pool and pool equipment and to keep the swimming pool/spa in a clean condition, maintain proper chemical balance and proper water levels. TENANT shall provide a semi-annual, professional pool service inspection and maintenance of all motors, pumps, filters and related equipment and provide a written report of the

TENANT INITIALS [DS] *MH*          Page **10** of **19**          TENANT INITIALS _____

© Avalon Realty & Oaktree Management, Inc. 2019

DocuSign Envelope ID: 75B6E5D8-026D-4239-99E6-45205C157E5E

results to the AGENT and failure to do so will result in a $150.00 charge.

**22) Appliances/Spa:** Clothes washer and dryer, garbage disposal, refrigerator, microwave oven, dishwasher and spa, if provided, shall be for the TENANT'S convenience only and will be maintained at the sole discretion of the LANDLORD. Should the unit(s) not be in operating condition at the termination of the lease, the expense of the repair or replacement will be born 50% by TENANT and 50% by LANDLORD, should LANDLORD wish to repair or replace for future TENANT use. However, should damage to any of these appliances be due to negligence, TENANT to bear the full cost of repair or replacement.

Neither LANDLORD nor AGENT assumes any liability for TENANT'S perishable items, food, clothes or dishes in the event of a mechanical or electrical failure and TENANT is to look to their Renter's Insurance Agent for relief.

**23) Additional "Rent":** All utility bills, landscape and pool service invoices, repair and maintenance bills which are TENANT'S responsibility; late fees, dishonored check charges, notice fees, attorney's fees, re-inspection fees, HOA fines and violations, eviction fees or administrative fees shall be due when incurred and shall become additional rent at the beginning of the month after the charge is incurred and shall be deducted from the first moneys received. TENANT'S failure to pay the full amount for a period may result in the initiation of eviction proceedings.

In the event any portion of these charges for which TENANT is responsible remain unpaid thirty (30) days after the written notice is sent electronically or mailed with a Certificate of Mailing, the outstanding balances due shall accrue interest at 10% simple interest per annum from the initial due date until paid in full.

Agent will email TENANT a statement of any outstanding charges monthly or as deemed practicable. TENANT agrees to notify Agent of any changes to their email address. TENANT can choose not to provide an email address but statements mailed via the US Postal Service will incur a handling fee of $5.00 plus actual postage.

In the event that the unpaid account is sent to Collection, a fee equal to 50% of the balance will be added. TENANT understands and acknowledges that LANDLORD or AGENT may give an Attorney or a Collection Company the TENANT'S personal information, including but not limited to, TENANT'S social security number and any other information to aid in the collection efforts and holds AGENT and LANDLORD harmless from any liability in relation to the release of any personal information to these entities.

TENANT warrants that all statements in rental application are accurate. TENANT authorizes AGENT and LANDLORD to obtain TENANT'S credit report at the time of the application and periodically during the tenancy or during any collection process.

**24) Distribution of Moneys Received:** TENANT agrees that all money received from them during the term of this Agreement or the disposition of the deposit shall be applied as follows: FIRST to any late fees owing; SECOND to any NSF charges or admin fees; THIRD to any legal fees owing: FOURTH to any deposits owing: FIFTH to any utility bills owing; SIXTH to pay for any damages caused by TENANT, their family, friends, guests or pets; SEVENTH to any past due rent and EIGHTH to any current rent due. This allocation will be elected automatically or at the discretion of the AGENT regardless of any annotation made by TENANT on their check, cashier's check or money order.

TENANT INITIALS [ MH ]          Page 11 of 19

                                        TENANT INITIALS _____

© Avalon Realty & Oaktree Management, Inc. 2018

DocuSign Envelope ID: 75B8E5D8-026D-4239-99E6-45205C157E5E

TENANT agrees that neither the LANDLORD nor AGENT shall be bound by any notation on the memo/notation line of any mode of payment from the TENANT for charges due. TENANT acknowledges that the monies will be applied as specified in the Lease Agreement or at the discretion of the LANDLORD or AGENT.

**25) Default:** If any default is made in the payment of rent or any part thereof, or if any default is made in the performance of or compliance with any other terms or conditions hereof, this lease, at the option of the LANDLORD or AGENT shall be deemed terminated and the deposits may be forfeited per the terms of the lease and state law.

If LANDLORD or AGENT terminates this contract due to TENANT'S default in the performance of this contract and/or TENANT is evicted for breach of terms or non-payment of rent, TENANT will be held liable under the terms of the following section "Remedies in Default"..

**26) Remedies in default:** In the event of default, LANDLORD and AGENT shall be entitled to recover from TENANT all damages incurred by LANDLORD or AGENT by reason of TENANT'S default, including but not limited to: the cost of recovering possession, eviction costs, re-keying, all expenses of re-letting, including advertising, cleaning, necessary repairs, renovation and alterations, reasonable attorney's fees, real estate or leasing commissions actually paid, required utilities and services that are necessary to repair, clean and maintain the property and all lost rent which TENANT is responsible for during the Term of this Agreement until the property is re-rented.

Deposit refund checks will be sent to your new address provided you have given it to us. If you have not, the check will be sent to the property address. Unclaimed funds will be escheated to the State of Nevada as outlined in State Law.

**27) Abandonment:** If rents have not been received within 7 days from due date and TENANT cannot be contacted by normal communications; the property shall be considered abandoned.

If TENANT abandons or vacates the property, while in default of the payment of rent, LANDLORD and AGENT may consider any property left on the premises to be abandoned and may dispose of the same in any manner allowed by law.

In the event the LANDLORD or AGENT reasonably believes that the abandoned property has no value, it may be discarded and TENANT agrees to hold the LANDLORD and AGENT harmless.

In the event LANDLORD or AGENT must provide for the safe storage of the TENANT'S personal property for a period of thirty (30) days following abandonment or as provided by State law, LANDLORD and AGENT may charge and collect reasonable and actual inventory, moving and/or storage costs before releasing the property to TENANT or TENANT'S authorized representative during the required storage period. After the expiration of this period, LANDLORD or AGENT may dispose of the property or the value thereof provided TENANT has been notified in writing of LANDLORD's or AGENT's intention to dispose of said property, as provided by state law.

If the TENANT leaves personal belongings behind either voluntarily or through eviction and wishes to retrieve those possessions, a representative of the LANDLORD or AGENT will meet TENANT at

TENANT INITIALS [ MA ]          Page **12** of **19**          TENANT INITIALS _____

© Avalon Realty & Oaktree Management, Inc. 2018

DocuSign Envelope ID: 75B8E5D8-026D-4239-99E6-45205C157E5E

the property and remain there until the TENANT has finished removing their belongings at a time mutually agreeable. The TENANT will pay a minimum fee of $40 per hour, payable in cash up-front.

**28) Liability:** TENANT agrees to make a diligent effort to report any hazardous conditions to the LANDLORD in writing as soon as they are discovered to enable them to be remedied at once. LANDLORD shall not be liable for any damage or injury to TENANT or any other person, or to any property occurring on the premises or any part thereof, or in common areas thereof, unless such liability is based on the negligent acts or omission of LANDLORD, AGENT, or Employee. TENANT agrees to hold LANDLORD harmless from any claims for damages caused by the negligent acts or omissions of the TENANT, their family, guests, invitees or pets.

Neither LANDLORD nor AGENT is liable for any damage or injury to TENANT or family, guests or pets or to any property occurring on the premises or any part thereof, or in the common areas unless such liability is based on the negligent Acts or omissions of the LANDLORD or AGENT. TENANT agrees to hold LANDLORD and AGENT harmless from any claims for damages no matter how caused, except for injury or damages for which LANDLORD or AGENT is legally responsible.

**29) Holdover by TENANT:** Should TENANT remain in possession of the leased premises with the consent of the LANDLORD after the natural expiration of this Lease, TENANT may either agree to renew the lease contract at a rental amount agreed upon by the TENANT and LANDLORD or a new tenancy from month-to-month shall be created. If the TENANT chooses to remain on a month-to-month Lease, the LANDLORD has the option to immediately increase the monthly rental rate to 25% higher than the rent paid during the initial term of the lease immediately.

If the lease reverts to a month-to-month tenancy, it may be terminated with a thirty (30) day written notice delivered to the AGENT by certified mail from the TENANT or by the AGENT serving a 30-Day "No Cause" Notice to Quit to the TENANT. Excluding the 20% higher holdover rent charge, all other terms and conditions of this lease shall remain in full force and effect except that the AGENT may change the conditions of the lease by giving the TENANT a 30-day notice as provided by NRS. Failure by TENANT to provide a properly served 30-day notice shall be deemed a default of the lease contract and grounds for the forfeiture of the Damage/Cleaning/Pet/Key deposits. If the AGENT serves a TENANT a 30-day Notice to Quit, the TENANT is responsible for paying rent for the full 30-day period of the Notice regardless if they stay the full 30 days or voluntarily move out sooner.

A document preparation fee of $125 is charged for each lease renewal

**30) Termination:** Termination of this lease by TENANT shall require thirty (30) days written notice delivered to the AGENT in person or by certified mail. Termination of this lease by AGENT or LANDLORD to the TENANT will be done by serving a 30-Day "No Cause" Notice to Quit to the TENANT. TENANT authorizes AGENT to place an electronic lockbox on the property once a thirty (30) day written notice is given to facilitate the showing of the property to potential buyers/lessees by other Realtors as necessary in conjunction with the marketing of the Property. If there is a pet on the property TENANT agrees to remove, contain or kennel their pet during this last 30 day period if the pet interferes in any way with access to the property.

TENANT may give a 30-day notice at any time but it will not it will not be considered as legal termination of the lease until 30-days prior to the end of the lease Term. The lease is in effect until the end of the contract or any extension thereof.

TENANT INITIALS [ MH ]          Page **13** of **19**

          TENANT INITIALS _____

© Avalon Realty & Oaktree Management, Inc. 2018

DocuSign Envelope ID: 75B8E5D8-026D-4239-99E6-45205C157E5E

If lease is terminated early due to TENANT'S decisions or actions or TENANT is evicted due to breach of the terms of this contract, the section 19, "Remedies in Default" shall apply.

LANDLORD will not respond to any requests for TENANT'S rental and payment history from a mortgage company or other prospective LANDLORD until TENANT has given a 30-day notice to vacate and TENANT is not in breach of the lease. AGENT will charge a $25.00 fee for processing such information verification.

TENANT authorizes AGENT to have the carpeting cleaned and deodorized at their expense upon move-out by a Professional licensed cleaning company. The actual cost of cleaning, repairing or replacing the carpets, drapes, screens or other property damaged by any pet kept on or about the leased premises will be deducted from the TENANT'S Pet Deposit and/or Damage/Cleaning deposits.

If there is any urine in the carpet padding, the padding will be replaced at TENANT'S expense.

TENANT agrees to pick up all pet droppings from the yard before vacating the property and understands that if they do not AGENT will hire a vendor to do this and deduct the cost from your deposits.

A fee of $85.00 will be charged to prepare the Move-Out Condition Report with Photographs and these will be e-mailed to TENANT upon completion.

**31) Deposit Disposition:** The Damage deposits will be refunded in full within thirty (30) days after move-out provided the TENANT has remained in the property for the full length of the lease and the rental Agreement and proper notices authorize termination; all funds due to that point have been paid; all personal property has been removed; all keys and remotes have been returned to the AGENT; all of the LANDLORD's personal property is on the premises ready for inventory; all utilities are on for the inspection; good and matching light bulbs are in every socket; all trash is removed from property and no damages other than those noted on the Move-In Property Condition Report are found. If the TENANT was responsible for landscaping, the grass is to be freshly cut and edged, shrubs trimmed, sprinkler system operating and in good condition with no broken sprinkler heads and lawn re-seeded as needed.

In the event of damage to the property not documented in writing during the initial move-in inspection report, including but not limited to: windows, screens, fireplaces, doors, light fixtures, appliances, carpeting, floors, walls, tile, woodwork, ceilings, cupboards, kitchen and bathroom fixtures, plumbing, electrical wiring, yard, trees, attic, garage, storage shed, swimming pool and spa, TENANT agrees to repair same at their expense. The resulting repairs must be to the satisfaction of the AGENT and LANDLORD or TENANT hereby authorizes AGENT to deduct the cost of the repairs from the deposits and understands an action for damages against TENANT may be filed.

AGENT reserves the right to have the carpets re-cleaned professionally at the TENANT'S expense if the Tenant has had the carpeting shampooed and has turned in a receipt for same if in AGENT's opinion or in the opinion of our preferred carpet cleaning professional vendor, we do not feel the job was done well enough.

If the water is not paid by the Homeowner's Association, you are required to give us proof that your final water bill is paid in full. We will withhold an additional $150.00 from your deposits until we receive this documentation or we have direct knowledge that you do not owe the water department.

TENANT INITIALS ⌊MH⌋          Page **14** of **19**
                                    TENANT INITIALS _____

© Avalon Realty & Oaktree Management, Inc. 2018

DocuSign Envelope ID: 75B8E5D8-026D-4239-99E6-45205C157E5E

The Damage Deposit shall be security for the faithful performance by TENANT of all the terms of the Lease Contract. The Damage Deposit is not rent and may not be used by the TENANT for that purpose under any circumstances. TENANT acknowledges that all deposits will either be held in the AGENT's trust account or sent to the property owner. TENANT hereby waives any claim for interest on the Deposits.

On execution of this lease, TENANT shall deposit with AGENT a $1,050.00 Refundable Damage Deposit, for the faithful performance by TENANT of the provisions and terms hereof, providing TENANT occupies the premises the full term of the lease. The actual cost of repairing property damage will be deducted from the TENANT'S Damage deposits.

At any time during the term of this Agreement and upon termination of the tenancy by either party for any reason, the LANDLORD may claim from the Damage Deposit such amounts due LANDLORD under this Agreement.

TENANT and AGENT acknowledge and understand that NRS 118.110 will be used as the guide in refunding the damage/cleaning/pet/or other deposits. The law does not acknowledge the common idea of "normal wear and tear". The law defines "normal wear" as follows:

**NRS 118A.110 "Normal wear" defined. "Normal wear" means that deterioration which occurs without negligence, carelessness or abuse of the premises, equipment or chattels by the TENANT, a member of his household or other person on the premises with his consent.**

TENANT authorizes AGENT to deduct any unpaid late fees, NSF fees, notice or eviction fees, lock changes due to eviction, utility and repair bills and any other charges that are TENANT'S responsibility under this Agreement and/or cleaning and maintenance charges from the Damage/Cleaning/Pet deposits after the TENANT has vacated the premises as specified in this Agreement.

We will charge a $125 maintenance coordination fee for re-inspections, meeting vendors at the property, etc. on top of the actual costs of cleaning and repairs if you have unfinished trash hauling, repairs, landscaping or other maintenance needs that you were responsible for maintaining and did not.

Pursuant to NRS 118A.242, LANDLORD shall provide TENANT with a written, itemized accounting of the disposition of the Damage Deposit within thirty (30) days of termination. TENANT agrees, upon termination of the tenancy, to provide LANDLORD with a forwarding address to prevent a delay in receiving the accounting and any refund.

If the AGENT'S authority is terminated prior to the expiration of this Agreement or any extension thereof and the deposits are released to the Owner as provided for by Nevada State Law, then AGENT shall notify TENANT in writing and provide the TENANT with the name, address and phone number of the Owner. Once TENANT has been provided such notice, TENANT agrees not to hold AGENT responsible for the deposits.

**32) Non-Refundable Cleaning Fee:** On execution of this lease, TENANT paid a non-refundable cleaning fee of $300.00. The TENANT must leave the home in "broom clean" condition. The cleaning fee covers normal house cleaning but it does not cover carpet cleaning, yard clean-up or wall washing. AGENT will handle carpet cleaning as outlined in Section 30. If the walls must be washed, the cost

TENANT INITIALS [MH]          Page **15** of **19**
                                        TENANT INITIALS _____

© Avalon Realty & Oaktree Management, Inc. 2018

DocuSign Envelope ID: 75B8E5D8-026D-4239-99E6-45205C157E5E

will be charged against your damage deposit.

**33) Waiver of terms:** A waiver by the LANDLORD or AGENT of any term or condition hereof shall not constitute a continuing waiver, but on the contrary shall constitute a waiver of only the promise, act or condition specifically waived.

**34) Attorney's fees:** In the event LANDLORD or AGENT shall be required to retain the services of an attorney or proceeds pro se or pro per in the event the LANDLORD is an attorney, in order to enforce any right, promise, condition or term hereof, including but not limited to: collection of rent, unlawful detainer or damages for the breach of any promise, term or condition hereof, the TENANT agrees to pay to LANDLORD and AGENT reasonable attorney's fees and costs of court hereby incurred.

**35) NOTICES:** Except as otherwise noted herein, all notices, statements, demands or other communications ("Notices") to be given shall be in writing and sent electronically or mailed, addressed to the TENANT at the leased property and to the LANDLORD or AGENT to "Avalon Realty & Oaktree Management, Inc." 500 Rose Street, Las Vegas, NV 89106. The Notice shall be deemed to have been given 2 business days from date the Notice was sent.

Either party may change its address for receipt of Notices by sending a Notice to the other party specifying a new address, which Notice shall not, however, become effective until actual receipt thereof by the other parties.

**36) Addendums:**

The following addendums are hereby made a part of this lease contract:

```
_____  Lease Addendum for Illegal Activity
_____  Smoke Detector Agreement
_____  Property Condition Report
_____  Duties Owed
__x___  Assembly Bill Number 194
__x___  Early Termination Policy & Procedure
_____  Rules & Regulations of the Common Interest Communities
_____  Military Clause
_____  Pet Agreement
_____  Lead Based Paint Disclosure and Pamphlet
__x___  Personal Representative
```

**37) Lead based paint:** TENANT may conduct a risk assessment or inspection of the Premise for the presence of lead-based paint and/or lead-based paint hazards at the TENANT'S expense for a period of ten days after execution of this Agreement. Such assessment or inspection shall be conducted by a certified lead-based paint professional. If TENANT for any reason fails to conduct such an assessment or inspection, then TENANT shall be deemed to have elected to lease the Premises "as is" and to have waived this contingency. If TENANT conducts such an assessment or inspection and determines that lead-based paint deficiencies and/or hazards exist, TENANT will notify LANDLORD in writing and provide a copy of the assessment/inspection report. LANDLORD will then have ten days to elect to correct such deficiencies and/or hazards or to terminate this Agreement. In the event of termination under this paragraph, the Deposits will be refunded to TENANT. If the property was constructed prior to 1978, refer to the attached Lead-Based Paint Disclosure and Pamphlet.

TENANT INITIALS ⌐DS MH          Page **16** of **19**

                                   TENANT INITIALS _____

© Avalon Realty & Oaktree Management, Inc. 2018

DocuSign Envelope ID: 75B8E5D8-026D-4239-99E6-45205C157E5E

**38) Dispute resolution:** TENANT and AGENT agree that they will mutually benefit from a procedure for resolving disputes which may arise between them and which might otherwise become the subject of litigation, in a cost efficient, fair and impartial manner. Therefore AGENT and TENANT agree that all potentially litigable claims or controversies, with the exception of actions relating to non-payment of rent or violation of the lease terms, arising from the rights, duties and/or obligations of this Agreement shall be handled as follows. First, both parties agree to formally meet as principals to attempt mutual resolution should any dispute arise out of this Agreement. Should the dispute not be resolved at this level, both parties agree to proceed with good faith mediation at the Neighborhood Justice Center at no cost to either party before filing or pursuing any adversarial or legal proceeding. **Both parties agree that neither party will electronically post or otherwise file any type of negative online review, complaint or lawsuit unless the mediation is unsuccessful and failure to abide by this may result in a lawsuit for breach of contract.** If a lawsuit is filed by either party, that lawsuit shall be stayed until the dispute is resolved or stalemated in accordance with this paragraph.

**39) Partial invalidity:** In the event that any provision of this Agreement be held invalid or unenforceable, such ruling shall not affect in any respect whatsoever the validity or enforceability of the remainder of this Agreement.

**40) Licensee Disclosure of Interest:** Pursuant to NAC 645.640, _____ Laura Barberini is a licensed real estate agent in the State(s) of Nevada and has the following interest, direct or indirect, in this transaction:
n/a – Principal (LANDLORD or TENANT) or n/a – family relationship or business interest

**41) Confirmation of Representation:** The Agents in this transaction are:

TENANT'S BROKERAGE: Renewal
Agents Name: Renewal        Agent's License#: Renewal
Address: Renewal
Phone Number: Renewal

LANDLORD'S BROKERAGE: Avalon Realty & Oaktree Management, Inc.
Agents Name: Laura Barberini        Agent's License#: BS.0000441
Address: 500 Rose Street, Las Vegas, NV 89106
Phone Number: 702-648-1299
Email: Laura@AvalonOaktree.com

**42) Summary of Initial Rents, Charges and Deposits:**

TENANT INITIALS [ MA ]        Page 17 of 19        TENANT INITIALS _____

© Avalon Realty & Oaktree Management, Inc. 2018

DocuSign Envelope ID: 75B8E5D8-026D-4239-99E6-45205C157E5E

|  | TOTAL | PAID | PAID PRIOR TO OCCUPANCY |
|---|---|---|---|
| Application Fee – non-refundable | $ | $ | $ |
| Lease Administrative Fee- non-refundable | $ | $ | $ |
| Cleaning Fee – non-refundable | $ | $ | $ |
| Cleaning Deposit | $ | $ | $ |
| Damage Deposit | $ | $ | $ |
| Key Deposit | $ | $ | $ |
| Admin Pet Fee – non-refundable | $ | $ | $ |
| Admin Pet Fee – Monthly Rate | $ | $ | $ |
| Credit Contingency Fee | $ | $ | $ |
| Resident Benefit Package | $ 5.00 | $ | $ |
| Utility Deposit | $ | $ | $ |
| HOA Registration Fee | $ | $ | $ |
| Rent From:12/01/19    To:12/31/19 | $ 1,225.00 | $ | $ |
| Utilities From:    To: | $ | $ | $ |
| Rent From:    To: | $ | $ | $ |
| Utilities From:    To: | $ | $ | $ |
| Landscape From:    To: | $ | $ | $ |
| Pool Service From:    To: | $ | $ | $ |
| Pet Deposit | $ | $ | $ |
| **TOTAL** | $ 1,230.00 | $ | $ |

**(Any balance due prior to occupancy must be paid in Certified Funds)**

TENANT INITIALS [ _MH_ ]        Page **18** of **19**

        TENANT INITIALS _____

© Avalon Realty & Oaktree Management, Inc. 2018

DocuSign Envelope ID: 75B8E5D8-026D-4239-99E6-45205C157E5E

**43) SIGNATURES:** The Agreement is accepted and agreed to jointly and severally. The undersigned have read this Agreement and understand and agree to all provisions thereof and further acknowledge that they have received a copy of this Agreement.

WITNESS whereof, the parties have executed this lease.

MARLENA HALL

TENANT – PRINT NAME

MARLENA HALL
SIGNATURE

HOME PHONE NUMBER

WORK NUMBER
7025057441

CELL PHONE NUMBER

SOCIAL SECURITY NUMBER

DATE OF BIRTH
06201978

EMAIL ADDRESS
11/5/2019

DATE

TENANT PRINT NAME

SIGNATURE

HOME PHONE NUMBER

WORK NUMBER

CELL PHONE NUMBER

SOCIAL SECURITY NUMBER

DATE OF BIRTH

EMAIL ADDRESS

DATE

**NICK PYKNIS**
LANDLORD/OWNER OF RECORD NAME

AVALON REALTY & OAKTREE MANAGEMENT, INC.
Management Company (AGENT) Name

By: _____
Authorized Agent for AGENT signature

11/5/19
Date

TENANT INITIALS  MH          Page **19** of **19**
                                        TENANT INITIALS _____

© Avalon Realty & Oaktree Management, Inc. 2018

DocuSign Envelope ID: 75B8E5D8-026D-4239-99E6-45205C157E5E

## Agreement to change Air Conditioning Filters every month

TENANT agrees to change or clean (if permanent type) at TENANT's sole expense, air conditioner/heating filters at least every (30) days. It is agreed that should the ceilings need to be repainted because the air filters were not changed on a monthly basis, TENANT is responsible for the cost to repaint same. If the air conditioner/heater requires service or repair due to dirty filters (i.e. coil cleaning or compressor replacement), TENANT will be charged the actual cost of the repair.



Why would you want to breathe dirty air?

Clogged or dirty air filters block the flow of air into your home and the AC will not work as efficiently. Dirty air gets past a filter and can be carried into the evaporator coil and reduce the coil's ability to absorb heat and cool your home.

The cost to clean the coils can run $75 to $150 and up. The cost to replace the compressor can run $1400 to $1800 and up.

The typical cost to buy an air filter runs between $4 and $20.

The U.S. Department of Energy states that clean air filters reduce your AC's electricity use by 5 to 15 percent and with the cost of energy in Nevada – that can be a substantial savings to you.

DocuSigned by:

*MARLENA HALL*

025619E991BB48F...

Signature

_____

Signature

11/5/2019

Date

_____

Date

DocuSign Envelope ID: 75B8E5D8-026D-4239-99E6-45205C157E5E

Assembly Bill No. 194–Assemblymen Ellison, Hambrick; Fiore, Grady, Healey, Hickey, Livermore, Neal, Oscarson, Stewart, Wheeler and Woodbury

Joint Sponsors: Senators Goicoechea and Settelmeyer

## CHAPTER 133

[Approved: May 24, 2013]

AN ACT relating to crimes; clarifying that a person who holds a leasehold interest in the real property of another person may be criminally liable for the destruction or injury of that real property; and providing other matters properly relating thereto.

**Legislative Counsel's Digest:**

Existing law prohibits a person from willfully or maliciously destroying or injuring the real or personal property of another person. (NRS 206.310) Existing law also provides that a person who is guilty of such an offense shall be punished: (1) where the value of the loss is $5,000 or more, for a category C felony; (2) where the value of the loss is $250 or more but less than $5,000, for a gross misdemeanor; (3) where the value of the loss is $25 or more but less than $250, for a misdemeanor; and (4) where the value is less than $25, by a fine of not more than $500. (NRS 193.155) This bill clarifies that a person who holds a leasehold interest in the real property of another person may be criminally liable for the willful or malicious destruction or injury of that real property.

EXPLANATION – Matter in *bolded italics* is new; matter between brackets [omitted material] is material to be omitted.

THE PEOPLE OF THE STATE OF NEVADA, REPRESENTED IN
SENATE AND ASSEMBLY, DO ENACT AS FOLLOWS:

**Section 1.  NRS 206.310** is hereby amended to read as follows:

206.310   *1.*   Every person who shall willfully or maliciously destroy or injure any real or personal property of another, for the destruction or injury of which no special punishment is otherwise specially prescribed, shall be guilty of a public offense proportionate to the value of the property affected or the loss resulting from such offense.

*2.*   *It is not a defense that the person engaging in the conduct prohibited by subsection 1 holds a leasehold interest in the real property that was destroyed or injured.*

| | |
|---|---|
| *MARLENE HALL* | 11/5/2019 |
| 025619E991BB48F... | |
| Tenant Signature | Date |
| | |
| Tenant Signature | Date |

DocuSign Envelope ID: 75B8E5D8-026D-4239-99E6-45205C157E5E

## Early Termination Policy & Procedure

In the event that you wish to terminate your lease prior to the expiration of the Term for any reason our Policy is to make every effort to find a qualified tenant as quickly as possible to enter into a new lease agreement for the Property.

If at all possible, we highly recommend that you sign a Lockbox Authorization to allow us to place an electronic lockbox on the home to expedite the chances that the home will re-rent quickly as making the home easily available to Agents will increase your chance of finding a qualified tenant quickly. If you do not agree to this, it may take longer to find a new tenant.

You will be held accountable for rent, monthly utilities, and if applicable monthly pool and landscaping costs until a new tenant is qualified, accepted, signed their lease and paid their first month's rent.

In addition you will be financially responsible for advertising costs, the MLS referral fee and our Leasing Fee. The exact amount of these fees will vary but generally run between $500 and $1000.

Once a replacement tenant is secured and has signed their lease and paid all deposits and their first months rent, your obligation for paying rent will stop. Your deposits will be eligible for full refund based on the terms of your lease agreement – specifically, how you left the home.

NRS 118.175 Liability of Tenant. If a tenant of real property abandons the property, the landlord shall make reasonable efforts to rent it at a fair rental. If the landlord rents the property for a term beginning before the expiration of the rental agreement pursuant to its terms of if, despite the landlord's reasonable efforts, the landlord is unable to rent the property before the rental agreement is otherwise terminated, the former tenant is liable for any actual damages of the landlord which may result from the abandonment.

If you vacate the property prior to our finding another tenant to move into the property, it is your duty to keep the power, gas and water services on until we notify you that a tenant has been found and is moving in. If you vacate the property prior to our finding another tenant to move into the property, it is your duty to pay the monthly rent, utility and services until we notify you that a tenant has been found and is moving in. If you vacate the property prior to our finding another tenant to move in, we will perform our Move-Out Condition Report and proceed with any necessary repairs and carpet cleaning as may be needed and send you an itemized accounting of any deductions taken from your deposits. However, the deposit money will not be refunded to you until a new tenant has been secured or the Term of your lease agreement ends provided you do not owe money.

If you do these things, you will receive a good rent reference from us.

Please understand that whatever your reason may be for wanting or needing to terminate your lease early, this Policy will not be changed or modified.

Avalon Realty & Oaktree Management

**I have read  and understand the Early Termination Policy & Procedure.**

| | |
|---|---|
| *MARLENA HALL* | 11/5/2019 |
| Name | Date |
| | |
| Name | Date |

Avalon Realty && Oak Tree Mgmt.
500 Rose Street
LAS VEGAS, NV 89106

| |
|---|
| PHONE (702) 648-1299 |
| TOLL FREE (800) 368-3427 |
| FAX (702) 648-8932 |

MARLENA HALL
5433 MAGIC MANGO ST
N. LAS VEGAS, NV 89031

# Statement

## MARLENA HALL for 5433 MAGIC MANGO ST

### January 1, 2018 to May 10, 2021

| Date | Description | Charge | Payment | Balance |
|---|---|---|---|---|
| 1/1/2018 | Beginning Balance | | | $0.00 |
| 7/1/2019 | RENT | $1,225.00 | | $1,225.00 |
| 7/5/2019 | Payment Received - MO #R208474097348 | | $1,000.00 | |
| 7/5/2019 | Payment Received - MO #R208474097337 | | $225.00 | $0.00 |
| 8/1/2019 | RENT | $1,225.00 | | $1,225.00 |
| 8/5/2019 | Payment Received - MO #17-936834083 | | $1,000.00 | |
| 8/5/2019 | Payment Received - MO #17-936834084 | | $225.00 | $0.00 |
| 9/1/2019 | RENT | $1,225.00 | | $1,225.00 |
| 9/5/2019 | Payment Received - MO #R208793551076 | | $1,000.00 | |
| 9/5/2019 | Payment Received - MO #R208793551065 | | $225.00 | $0.00 |
| 10/1/2019 | RENT | $1,225.00 | | $1,225.00 |
| 10/7/2019 | LATE FEES - RCVD VIA SAFE 10.7.19 | $61.25 | | |
| 10/7/2019 | Payment Received - MO #19-028233007 | | $225.00 | |
| 10/7/2019 | Payment Received - MO #19-028233006 | | $1,000.00 | $61.25 |
| 11/1/2019 | RENT | $1,225.00 | | $1,286.25 |
| 11/4/2019 | Payment Received - mo 19-028242574 | | $1,000.00 | |
| 11/4/2019 | Payment Received - mo 19-028242575 | | $225.00 | $61.25 |
| 12/1/2019 | RENT | $1,225.00 | | $1,286.25 |
| 12/2/2019 | ADMIN LEASE RENEWAL FEE | $125.00 | | |
| 12/2/2019 | TENANT BENEFIT PACKAGE | $5.00 | | $1,416.25 |
| 12/5/2019 | Payment Received - MO #17-946469955 | | $1,000.00 | |
| 12/5/2019 | Payment Received - MO #17-946469956 | | $225.00 | $191.25 |
| 1/1/2020 | RENT | $1,225.00 | | |
| 1/1/2020 | TENANT BENEFIT PACKAGE - MNTHLY TENANT BENEFIT PKG | $5.00 | | $1,421.25 |
| 1/4/2020 | Payment Received - MO 19-057618529 | | $1,000.00 | |
| 1/4/2020 | Payment Received - MO 19-065223985 | | $225.00 | $196.25 |
| 2/1/2020 | RENT | $1,225.00 | | |
| 2/1/2020 | TENANT BENEFIT PACKAGE - MNTHLY TENANT BENEFIT PKG | $5.00 | | $1,426.25 |
| 2/6/2020 | LATE FEES | $71.31 | | |
| 2/6/2020 | 5-DAY NOTICE - $150 | $150.00 | | $1,647.56 |

Prepared by Avalon Realty && Oak Tree Mgmt., Document 43-52110-10

# Statement

## MARLENA HALL for 5433 MAGIC MANGO ST

### January 1, 2018 to May 10, 2021

| Date | Description | Charge | Payment | Balance |
|------|-------------|--------|---------|---------|
| 2/7/2020 | Payment Received - MO #19-081806206 | | $1,000.00 | |
| 2/7/2020 | Payment Received - MO #19-081806207 | | $225.00 | $422.56 |
| 3/1/2020 | RENT | $1,225.00 | | |
| 3/1/2020 | TENANT BENEFIT PACKAGE - MNTHLY TENANT BENEFIT PKG | $5.00 | | $1,652.56 |
| 3/5/2020 | Payment Received - MO 19-079841393 | | $1,000.00 | |
| 3/5/2020 | Payment Received - MO 19-079841394 | | $325.00 | $327.56 |
| 4/1/2020 | RENT | $1,225.00 | | |
| 4/1/2020 | TENANT BENEFIT PACKAGE - MNTHLY TENANT BENEFIT PKG | $5.00 | | $1,557.56 |
| 4/7/2020 | Payment Received - MO #19-090193032 | | $625.00 | $932.56 |
| 4/21/2020 | Payment Received - mo r 208250051482 | | $525.00 | $407.56 |
| 5/1/2020 | RENT | $1,225.00 | | |
| 5/1/2020 | TENANT BENEFIT PACKAGE - MNTHLY TENANT BENEFIT PKG | $5.00 | | $1,637.56 |
| 5/11/2020 | Payment Received - MO #19090306484 | | $480.00 | $1,157.56 |
| 5/18/2020 | Payment Received - MO #19-090306943 | | $550.00 | $607.56 |
| 6/1/2020 | RENT | $1,225.00 | | |
| 6/1/2020 | TENANT BENEFIT PACKAGE - MNTHLY TENANT BENEFIT PKG | $5.00 | | $1,837.56 |
| 6/15/2020 | Payment Received - MO #19-077217501 | | $700.00 | $1,137.56 |
| 7/1/2020 | RENT | $1,225.00 | | |
| 7/1/2020 | TENANT BENEFIT PACKAGE - ENHANCED TENANT BENEFITS | $20.00 | | $2,382.56 |
| 7/13/2020 | Payment Received - MO #19-088435932 | | $800.00 | $1,582.56 |
| 8/1/2020 | RENT | $1,225.00 | | |
| 8/1/2020 | TENANT BENEFIT PACKAGE - ENHANCED TENANT BENEFITS | $20.00 | | $2,827.56 |
| 8/10/2020 | Payment Received - MO #19-140385511 | | $875.00 | |
| 8/10/2020 | CONVENIENCE FEE - MO #19-140385511 | $3.00 | | $1,955.56 |
| 9/1/2020 | RENT | $1,225.00 | | |
| 9/1/2020 | TENANT BENEFIT PACKAGE - ENHANCED TENANT BENEFITS | $20.00 | | $3,200.56 |
| 9/24/2020 | Payment Received - MO #19-166637292 | | $700.00 | |
| 9/24/2020 | CONVENIENCE FEE - MO #19-166637292 | $3.00 | | $2,503.56 |
| 10/1/2020 | RENT | $1,225.00 | | |
| 10/1/2020 | TENANT BENEFIT PACKAGE - ENHANCED TENANT BENEFITS | $20.00 | | $3,748.56 |
| 11/1/2020 | RENT | $1,225.00 | | |
| 11/1/2020 | TENANT BENEFIT PACKAGE - ENHANCED TENANT BENEFITS | $20.00 | | $4,993.56 |
| 11/13/2020 | Payment Received - MO #19-190848899 | | $1,000.00 | |
| 11/13/2020 | CONVENIENCE FEE - MO #19-190848899 | $3.00 | | |
| 11/13/2020 | Payment Received - MO #19-190848900 | | $180.00 | $3,816.56 |
| 12/1/2020 | RENT | $1,225.00 | | |
| 12/1/2020 | TENANT BENEFIT PACKAGE - ENHANCED TENANT BENEFITS | $20.00 | | $5,061.56 |
| 12/11/2020 | LATE FEES - PYMT PLAN RCVD LATE 12.11.20 | $61.25 | | |
| 12/11/2020 | Payment Received - MO #19-204980167 | | $800.00 | $4,322.81 |
| 1/1/2021 | RENT | $1,225.00 | | |
| 1/1/2021 | TENANT BENEFIT PACKAGE - ENHANCED TENANT BENEFITS | $20.00 | | $5,567.81 |
| 1/7/2021 | 5-DAY NOTICE - $150 | $150.00 | | |
| 1/7/2021 | LATE FEES | $61.25 | | $5,779.06 |
| 1/8/2021 | Payment Received - MO #19-204979855 | | $550.00 | $5,229.06 |
| 1/25/2021 | Payment Received - MO #19-220318294 | | $500.00 | |

Prepared by Avalon Realty && Oak Tree Mgmt., Document 43-52110-10



USPS TRACKING #

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 5540 9249 5579 51

United States
Postal Service

° Sender: Please print your name, address, and ZIP+4® in this box°

501 S. 6TH STREET
LAS VEGAS, NV 89101



U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)       $ _____
☐ Return Receipt (electronic)      $ _____
☐ Certified Mail Restricted Delivery  $ _____
☐ Adult Signature Required        $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

Postage
$
Total Postage and Fees
$

Sent To
Marlena Hall
Street 5433 Magic Mango St.
North Las Vegas, NV 89031
City, St

7019 2970 0001 4260 8165

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions



**Southern Nevada Eviction Services**
501 S. 6th Street
Las Vegas, NV 89101
(702) 366-0321 (ph)
(702) 366-1636 (fax)
www.vegas-evictions.com

May 10, 2021

Laura Barberini
Avalon Realty & Oaktree Management
500 Rose Street
Las Vegas, NV 89106

RE:    **Small Claims Case Against Marlena Hall – 5433 Magic Mango Street**

This agreement is to confirm that you wish to hire Southern Nevada Eviction Services to assist you in a potential small claims case against your tenant Marlena Hall. This agreement will outline the terms of assistance for this matter.

Our fee for representation in this matter will be $1,000.00. This includes preparing and mailing the demand letter, preparing the small claims complaint, attempting to serve the complaint on your tenants (based on the information provided by you), litigating the matter in small claims court as well as the court and process server fees. This fee does not include filing or representing you in any appeal of this matter or any collections on the judgment. Attempts to settle the matter prior to the commencement of any legal action will be at your discretion and discussions shall be between owner/property management and tenant, and will not include our legal assistance. Should you reach an agreement, you will be responsible for attorney's fees and costs incurred prior to settlement. In addition, you understand that Southern Nevada Eviction Services cannot guarantee that the tenant can be served and cannot locate the tenant should they no longer reside at your property. Should SNES be unable to serve the tenant, SNES will refund $400 to you and the case will be closed as "unserved."

We also have the right, at our discretion, to withdraw from your case if you have misrepresented or have failed to disclose material facts to us, if you fail to follow our advice, or in the event we determine it is not in our mutual interests to continue your representation. Likewise, you may discharge us at any time for any reason. You will be responsible for any fees and costs incurred prior to our withdrawal or discharge.

If this arrangement is acceptable, please sign and date below and return this document and payment to us. We will not being work on the case until we receive the signed letter and payment. We appreciate your business and look forward to working with you. If you have any question regarding this matter, please feel free to contact me.

/s/Edward D. Kania
Edward D. Kania
Southern Nevada Eviction Services

ACKNOWLEDGED AND APPROVED

Signature

Title

LAURA BARBERINI
Print Name

5/10/2021
Date

**Southern Nevada Eviction Services**
501 S. 6th Street, Las Vegas, NV 89101
(702) 366-0321  Fax: (702) 366-1636
www.vegas-evictions.com

*SMALL CLAIMS WORK ORDER*

CLIENT __NICK PYKNIS__ % AVALON REALTY

CONTACT __LAURA BARBERINI__

CLIENT ADDRESS __500 ROSE STREET,__

CLIENT CITY, STATE, ZIP  LAS VEGAS, NV  89106

CLIENT PHONE __702-493-8812__                CLIENT FAX __702-648-8932__

CLIENT E-MAIL __LAURA@AVALONOAKTREE.COM__                OWNER'S NAME ____

TENANT NAME __MARLENA HALL__

TENANT'S **HOME** ADDRESS __5433 MAGIC MANGO ST__                BLDG ____ APT ____

TENANT CITY, STATE, ZIP __NORTH LAS VEGAS, NV 89031__

TENANT SS# (IF KNOWN)____ 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__

TENANT WORK ADDRESS __620 SHADOW LANE__                SUITE ____

ALT. CITY, STATE, ZIP __LV NV 89106__

2ND TENANT NAME____

2ND TENANT'S **HOME** ADDRESS ____BLDG ____ APT ____

2ND TENANT CITY, STATE, ZIP ____

2ND TENANT SS# (IF KNOWN)____

2ND TENANT WORK ADDRESS ____SUITE ____

2ND TENANT ALT. CITY, STATE, ZIP ____

VACATED PROPERTY ADDRESS_____

VACATED CITY, STATE, ZIP_____

MOVE-IN DATE 7/22/14 _____ MONTHLY RENT AMT ___1500_____RENT
OWED___5536.21_____

LATE FEES OWED_____UTILITES OWED_____ EVIC. FEES _____

DAMAGE TO PROPERTY_____SECURITY  DEPOSIT
RETAINED____$1100_____

Gate Code  KK 6815

# EXHIBIT B

# (PROPOSED ORDER)

Amberlea Davis NV Bar #11551
LAW OFFICES OF AMBERLEA DAVIS
501 S. 6th Street
Las Vegas, NV 89101
(702) 440-8000
Amber@sheismylawyer.com
Attorney for Creditor Nick Pyknis

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | BK-2214269 |
| | ) | |
| | ) | Chapter 7 |
| MARLENA DENISE HALL | ) | |
| | ) | |
| Debtor | ) | |
| | ) | Date:  04/18/23 |
| | ) | Time:  1:30 pm |
| | ) | Teleconference: (669) 254-5252 |
| | ) |        Meeting ID 161 166 2815 |
| | ) |        Passcode 115788# |

## [PROPOSED] ORDER TERMINATING THE AUTOMATIC STAY

The Motion for Relief from Stay having been properly served, the Court makes its Order as follows:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Automatic Stay in the above-entitled Bankruptcy case shall be terminated as to the Debtor in favor of Movant Nick

Pyknis, as it pertains to the certain premises located at 5433 Magic Mango Street, North Las Vegas, NV 89031;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Nickk Pyknis may go forward with all remedies to which he is entitled, to take possession of said real property, using state court proceedings to do so, if necessary.

###

## <u>ALTERNATIVE METHOD RE: RULE 9021</u>

In accordance with <u>LR 9021</u>, counsel submitting this document certifies that the order accurately

reflects the court's ruling and that (check one):

____ The court has waived the requirement set forth in LR 9021(1).

____ No party appeared at the hearing or filed an objection to the motion.

____ I have delivered a copy of this proposed order to all counsel who appeared at the

hearing, and any unrepresented parties who appeared at the hearing, and each has

approved or disapproved the order, or failed to respond, as indicated below [list each

party and whether the party has approved, disapproved, or failed to respond to the

document]:

____ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this

order with the motion pursuant to LR 9014(g), and that no party has objected to the form

or content of the order.

RESPECTFULLY SUBMITTED:

 _/s/ Amberlea Davis_____
AMBERLEA DAVIS Bar # 11551
501 S. 6th Street
Las Vegas, NV 89101
Telephone: 702-380-4274
Fax: 702-380-8496
Amber@sheismylawyer.com
*Attorney for Nick Pyknis*